AO 106 (Rev. 04/10) Application for a Search Warrant

SEALED

**FILED**

FEB 1 4 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

SEALED

# UNITED STATES DISTRICT COURT
### for the
### Southern District of West Virginia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )  Case No.  3:18-mj-00017 |
| The Cellular Telephone Assigned Call Number | ) |
| 304-730-8067 | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____unknown_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of Heroin |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Charles E. Irwin, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 14, 2018

_____
*Judge's signature*

City and state:  Huntington, WV

Cheryl A. Eifert, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

The cellular telephone assigned call number (304) 730-8067, International Mobile Station Equipment Identity Number ("IMSI") 310120052932431 (Target Cell Phone 19), which is a prepaid cellular telephone with service provided by Sprint, 6480 Sprint Parkway Overland Park, Kansas 66251, and information about the location of Target Cell Phone 19 that is within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of ninety days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, is required to disclose the Location Information to the government.  In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phones on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate Sprint for

reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER (304) 730-8067

Case No. 3:18-mj-00017

**Filed Under Seal**

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Charles E. Irwin, being first duly sworn on oath, depose and say:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. Section 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (304) 730-8067, IMSI 310120052932431 (hereinafter "Target Cell Phone 19" or "TT19"), whose service provider is Sprint, a wireless telephone service provider, 6480 Sprint Parkway, Overland Park, Kansas 66251.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.    I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).  Specifically, I am a Special Agent with the Drug Enforcement Administration ("DEA"), assigned to the Charleston, WV District Office.  In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.).  I have been employed as a Special Agent with the DEA since July 2014.  Prior to becoming a Special Agent, I served with the Durham Police Department as a police officer and investigator.  In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, during the

course of which I have participated in physical surveillance, undercover operations, and executions of search warrants.

3.    I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking.  I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants.  As a result, I have become familiar with methods of operation of drug traffickers and organizations.  As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of heroin, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, marijuana and other dangerous drug organizations.

4.    I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking.  I have discussed and learned from other law enforcement investigators in regards to these matters as well.

5.    Based on my training, experience and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

6.    Through my involvement as co-case agent in a federal Title III investigation, I have gained experience in that investigation involving the interception of wire communications. I have been directly involved in the review and deciphering of

intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers about drug traffickers and their use of cell phones to facilitate drug trafficking by, for example, using code during their conversations. I have also received extensive instruction and practical training on intercepting communications and conducting coordinated surveillance while at the DEA Academy.

7.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. Section 841 (a)(1) have been committed, are being committed, and will be committed by Manget PETERSON and/or additional unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. I have not included every fact concerning this investigation. This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Application.

## II.   PURPOSE OF THIS AFFIDAVIT

9.    This affidavit is submitted in support of an application for a search warrant, all with respect to the following target telephone number:

a.   **Target Cell Phone 19**: (304) 730-8067, which is a prepaid cellular telephone bearing IMSI 310120052932431 with service provided by Sprint.  According to records obtained from Sprint, TT14 is subscribed to "Shawn Nicholson" at PO Box 15955, Lenexa, Kansas, with an activation date of February 23, 2017. Investigators do not know the full identity of the user of TT19, who I refer to hereinafter as "UM8067."

10.  Authority is requested to apply not only to the target telephone, but to any changed telephone numbers subsequently assigned to the telephone bearing the IMSI or ESN number for the target device, or to any cellular telephone bearing different IMSI or ESN number, but using the same telephone number currently assigned to the target telephone.

11.  This is the first application in this district for a GPS tracking warrant for the above listed Target Telephone.

### III. SOURCES OF INFORMATION

12.  I have obtained the facts set forth in this Affidavit through personal participation in the investigation, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, from confidential sources and sources of information who are associated with, and knowledgeable about, the subjects of this investigation and their confederates, and from other sources of information as referenced herein.  I have reviewed official reports prepared by other law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this Affidavit.

13.  During this investigation we have monitored and/or recorded conversations between Confidential Sources and targets of this investigation.  These conversations have been conducted in English.  When I refer to these conversations in this affidavit, I am relying on summary translations that have been provided to me

by investigators who are familiar and have worked extensively on this investigation or I have myself listened to the recorded conversations.

14.   On January 16, 2018, U.S. District Judge Robert C. Chambers signed an order authorizing the interception of wire and electronic communications to/from three phones used by PETERSON, namely (304) 962-5007 (referred to as "TT1"); (313) 737-8714 (referred to as "TT5"); and (304) 942-4638 (referred to as "TT6"). In this affidavit, I refer to intercepted communications to and from (313) 737-8714 (TT5) and (304) 942-4638 (TT6).   These communications occurred in English and I am relying on summaries and/or transcripts that have been prepared either by myself or by investigators that have worked extensively on this investigation.

## IV.   PROBABLE CAUSE

15.   This investigation is being conducted by DEA Charleston, West Virginia State Police ("WVSP"), and DEA Detroit.   This investigation began after investigators debriefed a WVSP confidential source (hereinafter "CS1[1]") who offered to make controlled purchase of heroin from an individual CS1 knew as "Money", who was distributing heroin in the Huntington, WV, area. Investigators showed CS1 a photo of PETERSON and CS1 identified PETERSON as "Money".   During October and November, 2017, investigators utilized CS1 to make multiple controlled purchases of various amounts of heroin from PETERSON ranging from one gram to one ounce.   These controlled purchases occurred on October 13,

---

[1] CS1 is signed up as a cooperating source with West Virginia State Police.  CS1 is cooperating for monetary benefits.  CS1 has prior arrests and/or convictions for theft, grand larceny, shoplifting, receiving stolen property, possession of counterfeit money, possession of controlled substance, fugitive from justice, issuing worthless check, domestic battery, contributing to the delinquency of a minor, battery, petit larceny, and assault.  CS1 has a history of substance abuse and is a heroin addict.  CS1 has provided credible information that has been independently verified by investigators.  Investigators believe CS1 to be a reliable source of information.

2017; October 26, 2017; November 14, 2017; November 28, 2017; and November 30, 2017.  The phones calls between CS1 and PETERSON to arrange these controlled purchases were recorded and the controlled purchases were also audio and video recorded.

16.  Investigators ultimately obtained court authorization, on January 16, 2018, to intercept the wire and electronic communications to and from three phones used by PETERSON, namely (304) 962-5007 (TT1); (313) 737-8714 (TT5); and (304) 942-4638 (TT6).

17.  Investigators began interception on January 17, 2018, and interception has confirmed that PETERSON is using (313) 737-8714 (TT5) and (304) 942-4638 (TT6) to facilitate his drug trafficking activities.  Investigators were informed by Verizon that (304) 962-5007 (TT1) was suspended due to nonpayment and to date, no wire or electronic data has been intercepted to/from (304) 962-5007 (TT1).

18.  This affidavit will highlight some of the drug related intercepted communication between PETERSON, using TT5 and TT6, and some of his known and unknown co-conspirators.  These conversations will show that the above referenced Target Telephone is being used to facilitate drug trafficking.

A.   Drug Related Communications between PETERSON and UM8067, (304) 730-8067 (TT19)

19.  On February 9, 2018, at approximately 11:28 a.m., PETERSON, (304) 942-4638 (TT6) called (session 5687) UM8067, (304) 730-8067 (TT19).  During the call PETERSON asked if UM8067 was still in bed.  UM8067 said he was still in bed but could be available, depending on what PETERSON needed.  PETERSON said he needed "five" and UM8067 said he would be ready soon.  PETERSON said he was on "Hal Greer" and UM8067 said he would call PETERSON when he arrived.

20. Later that day, at approximately 3:18 p.m., PETERSON, (304) 942-4638 (TT6) received a call (session 5786) from UM8067, (304) 730-8067 (TT19). During the call PETERSON said that he wasn't ready yet and UM8067 said that he just wanted to call and make sure PETERSON was ok. PETERSON said he was taking care of some "trouble" with "his people" and it would be at least another hour before he would be ready. UM8067 told PETERSON to take as much time as he needed.

21. Based on my training and experience, and that of those around me, I believe that in the above detailed intercepted communications, PETERSON requested "five" from UM8067. Based on our investigation to date we know that PETERSON sells gram quantities of heroin and I believe "five" is code for five grams of heroin. Based on intercepted communication between PETERSON and his re-distributors, I know that at the time PETERSON called UM8067, PETERSON had multiple customers requesting heroin. I believe that these calls show that UM8067 is a heroin trafficker in Huntington, West Virginia, that is available to PETERSON should he run low on heroin.

22. While interception did not reveal if PETERSON and UM8067 ever met on February 9, 2018, PETERSON again reached out to UM8067 on February 11, 2018. At approximately 2:58pm, PETERSON called (session 6437) UM8067 at (304) 730-8067. During the call, PETERSON asked, "…How long 'til you pull up?" UM8067 said, "30…35." PETERSON then asked, "30, 35 minutes?" UM8067 said, "Yea." PETERSON said, "Aight let me see if they gonna wait that long." UM8067 asked, "Oh okay, you say you needed 20?" PETERSON said, "No, no this Money man…" UM8067 asked, "How much was it again?" PETERSON said, "My homeboy want to get five of them." UM8067 said, "…I can't hear you bro." PETERSON said, "My homeboy want to get like four or five." UM8067 asked, "…you said hard?" PETERSON answered, "No, no, the food, the food." UM8067 said, "Ok you say

about four or five of them?"   PETERSON said, "Yea."   UM8067 said, "Boo Man know where to go…"   PETERSON said, "Alright alright bet bet bet…"

23.   Based on my training and experience, and that of those around me, I believe that in the above detailed intercepted call, PETERSON ordered up heroin.   UM8067 asked if PETERSON needed "twenty," to which PETERSON identified himself as "Money" and that his homeboy needed only "four or five."   UM8067 then asked if PETERSON wanted "hard," which I believe refers to cocaine. PETERSON corrected UM8067 and said he wanted "the food," referring to heroin.   "Food" and "dog food" is a term used to refer to heroin.

24.   Investigators believe UM8067 is using the above described Target Telephone to facilitate his drug trafficking activities and the requested search warrant will allow us to identify UM8067.

### V.   CONCLUSION

25.   Based on the investigation to date, summarized above, investigators believe the above described Target Cell Phone is being used to facilitate drug trafficking.   Based upon the information which has been uncovered during the course of this investigation, and on the advice, experience, and knowledge of other agents/detectives involved in this investigation, I believe that these specific and articulable facts present reasonable grounds to believe that GPS data, and other information sought here are relevant and material to an ongoing criminal investigation, and that there is probable cause to conclude that the user of the above described Target Telephone is actively engaged in a conspiracy to violate the federal controlled substances laws specified above.

26.   In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general

public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service:  (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" that received a radio signal from the cellular telephone and, in some cases, the "sector" to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

27.  Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone(s), including by initiating a signal to determine the location of the Target Cell Phone on their network or with such other reference points as may be reasonably available.

28.  Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone.

29.  Based on the facts set forth in this affidavit, there is probable cause to suspect that violations of 21 U.S.C. § 841 and § 846 have been committed, are being committed, and will be committed by the users of the above described Target Telephone. In order to obtain additional information relating to their criminal violations under investigation, law enforcement must

identify the physical location of the above described Target Cell Phone. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

30. I further believe that the requested information will assist agents in identifying connections between conspirators, identifying new conspirators, and lead agents to locations used by the organization to store and distribute large quantities of controlled substances and/or proceeds derived from the sale of controlled substances.

## V.   AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure 41 and 18 U.S.C. Section 2703 (c).

27. To avoid seriously jeopardizing both the DEA investigation, and to avoid the risk of the suspects' potential flight from prosecution and destruction of evidence prior to indictment, I request that this pleading be sealed and that notice required by Fed. R. Crim. P. 41(f) be delayed until 30 days after the collection authorized by the warrant has been completed, in accordance with Title 18, United States Code, Section 3103a(b). Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, if prematurely disclosed to the public, could result in the targets' flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against and other potential witnesses, and otherwise seriously jeopardize the ongoing investigation. Specifically, information contained in this affidavit, if disclosed, could pose a significant risk to the safety of CS1 should his/her identity be discovered while operations are ongoing, and to the officers and agents who are conducting surveillance during the operations involving CS1. Therefore, I

request that this affidavit be sealed. If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

28. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

_____
Charles Irwin, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this 14th day of February, 2018.

_____
HONORABLE Cheryl A. Eifert
United States Magistrate Judge